[No. H014154. Sixth Dist. Aug. 20, 1996.]

In re the Marriage of SILVIA JOVEL and RAFAEL JOVEL.
SILVIA JOVEL, Respondent, v.
RAFAEL JOVEL, Appellant;
BAY VIEW FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Interveners and Respondents.

COUNSEL

Robert J. Fulton for Appellant.

No appearance for Respondent.

Miller, Starr & Regalia, Rachel Jacobs Dragolovich, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick and Paul J. Matzger for Interveners and Respondents.

OPINION

**PREMO, Acting P. J.**—Appellant Rafael Jovel obtained reversal in this court of a judgment against him, and was awarded costs. The trial court ordered respondents Bay View Federal Savings and Loan Association and Bay View Auxiliary Corporation (hereafter, Bay View) to pay only $9,129 of the requested $28,510 attorney fees and half the costs of prosecuting the appeal. Appellant contends the trial court erred in limiting the award.

### BACKGROUND AND FACTS

After Silvia Jovel (hereafter, Wife) filed a marital dissolution action on July 17, 1987, she obtained from appellant a quitclaim deed transferring his interest in the family residence on Fulton Street in Sunnyvale to her. Wife was experiencing financial difficulties, and about seven months later she accepted financial assistance from her boyfriend Edgar Castro in exchange for an interest in the Fulton Street property. In transactions all taking place on August 1, 1988, she deeded that property to herself and Castro in joint tenancy. She and Castro then refinanced the property with Bay View for $127,500. They applied part of the proceeds as a down payment on a house on Monte Court in Fremont which they purchased as joint tenants. They executed a deed of trust to that property to Bay View to obtain an additional loan of $156,000. Subsequently, Wife, the four children of the Jovel marriage, and Castro moved into the Monte Court house. Wife caused a default judgment of dissolution of marriage to be entered on September 9, 1988.

Shortly thereafter appellant learned of these dealings. On October 28, 1988, he moved to set aside the default judgment and cancel the quitclaim deed. After a contested hearing, on December 28, 1989, Judge Catherine Gallagher set aside the default judgment, found the quitclaim deed void *ab initio* for mistake, ordered it canceled, and ordered Wife to account to appellant for the proceeds from the rent or transfer of the Fulton Street property.

On June 13, 1990, the court granted appellant's motion to join Castro and Bay View as claimants in the dissolution action. Appellant sought to void the conveyance to Castro, void Bay View's encumbrances, and perfect a community interest in the Monte Court residence. On August 31, 1990, the quitclaim deed was canceled and deposited in superior court file No. 633833 in compliance with Judge Gallagher's order. In June 1991, Bay View commenced nonjudicial foreclosure proceedings against both properties, claiming that both loans had become delinquent. The trial court restrained those foreclosure proceedings pending the outcome of trial.

After a five-day trial in June 1992, Judge Mary Jo Levinger "clerically corrected" Judge Gallagher's order to the effect that the quitclaim deed was voidable, not void *ab initio*. She then found that appellant intended to and did transfer his interest in the Fulton Street property to his children and that he did not reacquire an interest in the property when the quitclaim deed was declared void. Appellant therefore had no community interest in the loan proceeds and hence acquired no interest in the Monte Court property acquired by the loan proceeds. Judge Levinger ordered appellant to pay attorney fees of $15,000 to Wife and $25,000 to Bay View.[1]

In addition, believing that "no action has been taken to actually void the quitclaim deed," Judge Levinger reformed the deed to reflect that Wife's one-half interest in the Fulton Street property was held for the benefit of the children, that Wife and Castro held title to the Fulton Street property and that they were the owners of the Monte Court property, and that they were liable for the mortgages on the Monte Court and Fulton Street properties to Bay View.

Appellant filed an appeal in this court. We reversed the judgment and awarded costs to appellant. (*In re Marriage of Jovel* (Aug. 8, 1994) H010715 [nonpub. opn.].)

On November 21, 1994, appellant moved the trial court to order Bay View to pay $28,510.25 of the $32,278 attorney fees incurred in connection with the appeal.[2] Bay View objected to the amount of attorney fees but did not move to tax costs. On April 27, 1995, Judge Catherine Gallagher ordered

---

[1]Bay View was ordered to pay appellant $23,751 in pendente lite fees on April 17, 1992. Bay View unsuccessfully appealed that order. (See *In re Marriage of Jovel* (July 20, 1990) H009800 [nonpub. opn.].)

[2]Appellant states he excluded from his request attorney fees not relating to Bay View, such as fees incurred in connection with Castro's mid-appeal bankruptcy filing, half the fees for the reply brief since appellant was responding to arguments of Castro as well as to those of Bay View, and half the fees for oral argument since Castro as well as Bay View presented oral argument. Furthermore, "purely marital issues," for example, custody, support, division of

Bay View to pay $9,129 attorney fees to appellant and one-half the costs. This appeal ensued.

## ISSUES ON APPEAL

Appellant raises an issue which he believes is of first impression, namely, "the meaning and scope of the words 'issues relating to' " in the attorney fee provision of Family Code section 2030, subdivision (d).[3] That subdivision allows the court to order a nonspouse party to pay attorney fees or costs "limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (*Ibid.*) Appellant contends that the quoted language does not require the issues to relate solely or exclusively to that party.

Appellant also asserts that the court abused its discretion in fixing the amount of attorney fees awarded to him. Finally, he maintains that in ordering Bay View to pay only half of the awarded costs, the trial court improperly allocated the appeal costs among the opposing parties.

## SECTION 2030

■ Appellant states that the "core issue" of his successful appeal was "related to" Bay View even if nominally it challenged only the quitclaim deed. The issue was "the effect of a void deed on subsequent 'grantees'[.] Each of the parties' real property title claims to ownership or security interest depend upon the answer to that question. HUSBAND'S appeal was of a judgment which, by correcting a 'clerical error,' transformed, by deleting the words ab initio, the void deed into a voidable deed in order to resolve those title issues. . . . [B]ut for the 'clerical correction,' none of the other property title findings and orders of the judgment could have been made." (Fns. omitted.)

Appellant adds, "issues relating *to* a third party joined in a dissolution proceeding will *always* also relate to other parties. Otherwise the issues would not have been a proper basis for joinder." (Original italics.)

Bay View was made a party to the marital dissolution action as an entity with "an interest relating to the subject of the action and [which] is so

marital property other than the Fulton Street and Monte Court properties, and valuation and division of employment benefits, were settled by stipulation and were not part of the judgment reversed on appeal.

[3]Further statutory references are to the Family Code. Subdivision (d) of section 2030 provides: "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party."

situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." (Code Civ. Proc., § 389, subd. (a).)

### 1. *Defining the Issue Raised on Appeal*

At the hearing on the application for attorney fees in the trial court, while appellant asserted that the issue raised on appeal was the propriety and effect of Judge Levinger's transmutation of Judge Gallagher's order that the deed was void *ab initio* into a finding that the deed was voidable, Bay View disagreed. In the trial court and here, Bay View gleaned issues relating to it by looking at the final judgment and counting the findings and orders which contained its name. Bay View argued that the issues relating to it were limited to Judge Levinger's "orders 4 (which held that it was a bona fide encumbrancer for value on the two properties at issue); 7 and 10 (that [Wife] and Mr. Castro were liable on the underlying notes in favor of Bayview); and 15 (which ordered [appellant] to pay a portion of Bay View's attorneys' fees)."

Bay View disavowed any relationship to the remainder of the final judgment. Bay View explained that paragraph 1 of the final judgment deleting the words "*ab initio*" from Judge Gallagher's order, granted "relief unnecessary so far as Bay View is concerned, and the only issue directly appealed by Mr. Jovel." Paragraph 2, reforming the quitclaim deed to conform with the trust intent of the Jovels, was "an issue not critical to Bayview's independent rights as a bona fide encumbrancer." Paragraph 3, declaring Castro a bona fide purchaser of the Fulton Street property, was "an issue important but again not key to Bay View's bona fide encumbrancer status." Paragraph 5, declaring appellant had no interest in the Fulton Street property, was "not a vital issue for Bay View in upholding the validity of its deed of trust. Other paragraphs of the judgment appealed from (paragraphs 8 [declaring appellant had no interest in the Monte Court property], 13 [releasing the rent receipts for Fulton Street for payment to Bay View], 14 [ordering appellant to pay attorney fees to Wife]) are similarly not 'Bay View issues' so far as the fee demand is concerned."

Bay View concluded: "[appellant] never in his appeal attacked the core factual finding and legal conclusion that Bay View was a bona fide encumbrancer for value on the two parcels. All that [appellant] did was attack the procedural irregularity of the trial court's purporting to modify the December 29, 1989 order."

Bay View mistakes findings for issues. ■ A "finding" is "[t]he result of the deliberations of a jury or a court. A decision upon a question of fact reached as the result of a judicial examination or investigation by a court, jury, referee, coroner, etc. A recital of the facts as found. The word commonly applies to the result reached by a judge or jury." (Black's Law Dict. (6th ed. 1990) p. 632.) An "issue" is "[a] single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other. A fact put in controversy by the pleadings; such may either be issues of law or fact. An 'issue' is a disputed point or question to which parties to action have narrowed their several allegations and upon which they are desirous of obtaining either decision of court on question of law or of court or jury on question of fact." (Black's Law Dict., *supra*, at p. 831; cf. *Muller* v. *Muller* (1965) 235 Cal.App.2d 341, 343 [45 Cal.Rptr. 182].)

■ The issue that appellant raised on the appeal is the basis for Judge Levinger's findings involving Bay View. This was the issue that Bay View admits it defended on appeal. It also argued that use of the determination that the deed was void *ab initio* to bar Bay View from litigating its bona fide encumbrancer claim would violate its due process rights and that appellant was not prejudiced by the correction. It is clear that Bay View was actively involved in litigating the issue determined on appeal.

In its opposition to attorney fees, Bay View wrote: "In view of the testimony of [appellant] at trial, . . . it is no wonder that [appellant] chose not to attack the 'Bay View' portion of the Final Judgment. He admitted that he executed the deed; that he intended his wife to hold the property (for the unexpressed benefit of the Jovel children); that he had no agreement with [Wife] regarding encumbering the property after the conveyance; and that there was no agreement to convey the property back to him. Thus, so far as the record was concerned, [appellant] had no interest or title to the Fulton Avenue property at the time Bay View loaned $127,000 to the record title holders, [Wife] and Mr. Castro." Bay View adds: "Although Castro's and Bay View's bona fide status depended on the finding that the quitclaim deed was, as to them, voidable, that determination did not (as argued by [appellant]) hinge on the clerical error issue, but on the underlying transactional facts going to [Wife's] deed to Castro and their deeds of trust in favor of Bay View." (Fn. omitted.)

Insofar as this interpretation of the final judgment underlies Bay View's contention that our determination on appeal did not much relate to it, we disagree. ■ When a deed is void *ab initio*, it "constitutes a nullity; as such it cannot provide the basis for a superior title as against the original

grantor. [Citations.]" (*Wutzke* v. *Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43 [198 Cal.Rptr. 418].) " 'A void deed passes no title and cannot be made the foundation of a good title even under the equitable doctrine of bona fide purchase.' " (*Erickson* v. *Bohne* (1955) 130 Cal.App.2d 553, 557 [279 P.2d 619], quoting 26 C.J.S. at pp. 307-308.)

 No matter what the spouses wanted to do, intended to do, and tried to do in regard to the Fulton Street property, the final unappealed order issued by Judge Gallagher settled the fact that they did not do it. Appellant did not convey his interest in the Fulton Street property to Wife via the quitclaim deed. The quitclaim deed was "of no more value to convey title than a piece of blank paper, and utterly valueless as evidence of title." (*Sparrow* v. *Rhoades* (1888) 76 Cal. 208, 211 [18 P. 245].) Appellant's community property interest remained in him. Consequently, those of Judge Levinger's findings resting on her conclusion that the quitclaim deed was effective to transfer appellant's interest and that it was voidable but not declared void until after Bay View and Castro obtained their interest in the Fulton Street property, had to fall when their basis fell.

Bay View's position that this issue did not relate to it is untenable.

### 2. *Multiple Parties Defending the Same Issue*

Appellant asserted that he was entitled to 100 percent of his attorney fee claim from Bay View because section 2030, subdivision (d), "has no requirement the issues be 'exclusively' or 'solely' related to the joined third party."

Bay View responded that "[w]here issues litigated at trial or on appeal from each and every part of the judgment in favor of multiple defendants do not relate entirely to a single defendant, § 2030(d) of the Family Code must be construed to avoid requiring one party to subsidize litigation of common or unrelated issues against other parties."

Bay View cites a family law treatise, "the only authority Bay View can find which bears directly on the issue before the court." The treatise states: "An order requiring a third party to pay § 2030 fees/costs 'shall be *limited* to an amount reasonably necessary to maintain or defend the action *on the issues relating to that party*.' [(Fam. Code, § 2030, subd. (d); emphasis added.)]

"Thus, unlike the party spouses, third parties cannot be ordered to pay the applicant party's entire fees and costs obligation, even if otherwise reasonable (except, of course, in those rare cases where the fees and costs were

entirely attributable to the issues involving the third party).” (Hogoboom & King, Cal. Pactice Guide: Family Law 3 (The Rutter Group 1996) ¶ 14:136, pp. 14-31 to 14-32.)

■ “ ‘In construing a statute “we begin with the fundamental rule that a court ‘should ascertain the intent of the Legislature so as to effectuate the purpose of the law.’ ” [Citations.] “An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.” [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] “If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.” [Citations.]’ [Citations.]” (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 43-44 [231 Cal.Rptr. 757].)

■ “Moreover, a statute must be construed in context, considering its nature and obvious purpose. [Citations.] The obvious purpose of section 4370 [predecessor to section 2030[4]] is to provide one of the parties with funds reasonably required to litigate the controversy. [Citation.]” (*In re Marriage of Siller, supra,* 187 Cal.App.3d at p. 44.)

■ “ ‘ “The basis for awarding attorney’s fees is that each party must have access to legal representation in order to preserve all of his or her rights.” ’ [Citation.] Thus, a trial court must consider the respective incomes and needs of the parties, including all evidence concerning income, assets and abilities, in exercising its discretion to award attorney’s fees. [Citations.]” (*In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, 1496-1497 [2 Cal.Rptr.2d 690].) “Numerous cases have reiterated the principle that need is a prerequisite to any fee award. [Citation.]” (*In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277, 1287 [266 Cal.Rptr. 548].) When the fees sought concern an appeal, the court must evaluate whether the appeal was in good faith and reasonable. (*Id.* at p. 1290.)

---

[4]Civil Code section 4370 is the predecessor Family Law Act attorney fee statute, enacted in the Family Code with no substantial changes in 1993 (see Cal. Law Revision Com. com., Deering’s Ann. Fam Code (1994 ed.) § 2030, p. 407). Civil Code section 4370, subdivision (a), provided in relevant part: “. . . Any order requiring a party who is not the husband or wife of another party to the proceedings to pay attorney’s fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party.” (See Stats. 1991, ch. 500, § 1.) Section 2030, subdivision (d), reads: “Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney’s fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party.” Section 2030 was added by Statutes 1993, chapter 219, section 106.1. Civil Code section 4370 was repealed by Statutes 1992, chapter 162, section 3, operative January 1, 1994.

 The statute fairly limits attorney fees awarded against a nonspouse party in a dissolution action to issues "related to that party." "Related" means "[s]tanding in relation; connected; allied; akin." (Black's Law Dict., *supra*, at p. 1288.) However, nothing in the language of the statute or in the definition requires that attorney fees should be apportioned among spouse and nonspouse parties when an issue relates to both. Indeed, it would not further the purpose of "enabling one party to litigate the controversy," for a court, having considered the factors stated above, to then be required to disregard the showing of ability to pay in order to apportion fees among the parties sharing an issue regardless of their ability to pay.

 "The facts and circumstances of the parties in each family law case are different, which is why these cases are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity." (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 [31 Cal.Rptr.2d 749].)

 Consequently, we read Hogoboom and King to say that it would not be unusual for issues involving the third party to be heard in the same proceeding as issues involving the spouses only. In such a circumstance, the third party could not be ordered to pay for fees and costs attributable to the issues involving the spouses only. However, we do not think the statute limits the discretion of the court hearing the fee application to determine whether the third party should pay all of the attorney fees and costs when the issue or issues heard affect both the nonspouse and spouse parties. (Accord, *Guardianship of Paduano* (1989) 215 Cal.App.3d 346, 352 [263 Cal.Rptr. 589].)

### LIMITATION OF AWARD

 Next, appellant contends that the court erred in awarding only a portion of the amount of attorney fees requested.

 "A motion for attorney's fees in a marital dissolution action is left to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. [Citation.]" (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at p. 1496.)

"Discretion must be exercised in a manner which is not capricious or arbitrary, but, rather, is impartial and guided by fixed legal principles. Discretion also must be exercised in conformity with the spirit of the law and in a manner which will promote and not defeat the ends of substantial justice." (*In re the Marriage of Kerry* (1984) 158 Cal.App.3d 456, 464 [204

Cal.Rptr. 660].) " '[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' " (*In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 880 [165 Cal.Rptr. 389], quoting *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].)

◼ "It is well established that in determining a reasonable fee in dissolution cases the trial court is permitted to consider various factors: namely, the nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and the attorneys selected by the wife. [Citations.]

"The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case. Certainly a desirable objective of domestic litigation is prompt and equitable resolution of marital difficulties rather than their bitter prolongation. Conscientious and successful efforts by counsel to resolve as many areas of disagreement as possible without judicial intervention is entitled to serious consideration in awarding attorney's fees. Compensable professional legal skill is not limited to trial time or courtroom techniques alone." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58].)

" '[W]hen the trial court is informed of the extent and nature of the services rendered, it may rely on its own experience and knowledge in determining their reasonable value. [Citations.]' [Citation.] [¶] Reasonable value of services need not bear a direct relationship to the number of hours spent working on the case, because some hours may be unproductive, whereas others may be exceedingly valuable. [Citation.]" (*In re Marriage of Munguia* (1983) 146 Cal.App.3d 853, 863 [195 Cal.Rptr. 199].)

◼ At the hearing held on March 1, 1995, two attorney fee motions were before the court. One requested the fees awarded on appeal and the other requested $105,990.58 in fees "that were incurred prior to trial and through the statement of decision . . . originally requested in June of 1992 . . . [and] resubmitted following reversal of the judgment."

In supporting the attorney fee on appeal request, appellant's attorney, a certified family law specialist practicing in the local courts for 22 years, requested $22,085.50 for the opening brief, $2,655.50 for one-half of the reply brief, $1,876.25 for one-half of oral argument, $1,129 for the petition

for rehearing, $750 for preparation of the postappeal motion for fees in the trial court, and the $14 filing fee for the motion. Appellant's purpose in prosecuting the appeal was to fight for the family home, a substantial asset worth approximately $200,000.

In opposition, Bay View argued that "pivotal to this motion is Mr. Jovel's assertion that we cannot challenge this void quitclaim deed. And that is something we disagree about and we have been arguing about since the inception of this case. We believe that we are not collaterally estopped; that that order was never one that could be applied to Bay View." Bay View reiterated that "if the court looks at the final judgment for which the appeal fees are sought, the court will note that there are basically 16 paragraphs in that judgment which deal with issues relating to the property, with issues relating to Mr. Castro and . . . Mrs. Jovel which relate to the children." Bay View argued appellant should not "get fees from Bay View . . . for issues that deal with the Jovels." In requesting 100 percent of fees for the opening brief but only 50 percent of fees for the reply brief and oral argument, appellant "simply wants Bay View to pay his attorney for obtaining reversal of the Levinger Judgment against [Wife] and Castro as well." (Fn. omitted.)

The "Order re Attorney Fees on Appeal" filed on April 27, 1995, states: "The Court finds that the amount of $9,129.00 for attorney's fees was reasonably necessary for the prosecution of the appeal on the issues relating to Bay View Federal. Costs in the amount of $531.55 were requested. Bay View Federal is to pay one-half of these costs."[5]

The finding that "the amount of $9,129.00 for attorney's fees was reasonably necessary for the prosecution of the appeal on the issues relating to Bay View Federal" provides an inadequate basis for reviewing the exercise of the trial court's discretion. Appellant is correct that this is a case of first impression. The key phrase in this case, "issues relating to," has not been the subject of statutory construction. Neither the court's order nor the record indicates to us what the court decided on the essential and hard-fought question of what the "issues relating to" Bay View were. We do not know whether the court decided the issues relating to Bay View were defined by the findings of the final judgment as Bay View argued or by the issues litigated on appeal as we have determined. We do not know whether the

---

[5]On May 11, 1995, appellant filed a request for findings or in the alternative clarification of the order. No such findings appear in the record. None are required in the absence of a timely request. (Code Civ. Proc., § 632.) ". . . The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. . . ." (Code Civ. Proc., § 632.) The request here was not made prior to the submission of the matter for decision.

court decided it had to apportion attorney fees among the parties sharing an issue even if one party did not have the ability to pay or if it exercised its discretion in accordance with the factors set forth in the beginning of this section which allow the court, on a proper showing, to order an able party to pay the reasonable value of attorney fees for an issue relating to it.

"It is generally presumed that a trial court has followed established law [citation; (Evid. Code, § 664)], but this presumption does not apply where the law in question was unclear or uncertain when the lower court acted [citations]. [¶] Given the ambiguity of the statutory language in question, and the lack of any authoritative construction, there is a substantial likelihood the trial court relied on an incorrect interpretation of the provision in question." (*People* v. *Jeffers* (1987) 43 Cal.3d 984, 1000-1001 [239 Cal.Rptr. 886, 741 P.2d 1127].) Since the basis on which the court made the order of attorney fees cannot be established from the record, we are precluded from meaningful review and remand is necessary.

## ALLOCATION OF COSTS

 Finally, appellant contends that when an appellate court awards costs to one of the parties to an appeal without further direction, the trial court is not empowered to apportion those costs among the opposing parties. Appellant cites *Ramirez* v. *St. Paul Fire & Marine Ins. Co.* (1995) 35 Cal.App.4th 473 [41 Cal.Rptr.2d 416], for the proposition that "only the reviewing court is empowered to depart from the usual rule for awarding costs when 'the interests of justice require it,' as by directing the parties to bear their own costs, by awarding costs to other than the nominal prevailing party, or by apportioning costs among the parties. [Citations.]" (*Id.* at p. 478; Cal. Rules of Court, rule 26.)[6] "When an appellate court directs in its opinion that the appellant is to recover its costs on appeal, 'no one, neither

---

[6]California Rules of Court, rule 26 provides: "(a) Except as provided in this rule, the prevailing party shall be entitled to costs on appeal as an incident to the judgment on appeal. In the case of a general and unqualified affirmance of the judgment, or the dismissal of an appeal, the respondent shall be deemed the prevailing party; in the case of a reversal, in whole or in part, or of a modification of the judgment, the appellant shall be deemed the prevailing party. *In any case in which the interests of justice require it, the reviewing court may make any award or apportionment of costs it deems proper. . . .*

"If there is more than one notice of appeal or if the judgment of the trial court is reversed in whole or in part, or modified, the opinion shall specify the award or denial of costs.

"(b) In any case in which the reviewing court directs the manner in which costs shall be awarded or denied, the clerk shall enter on the record and insert in the remittitur a judgment in accordance with such directions. In the absence of such directions by the reviewing court the clerk shall enter on the record and insert in the remittitur a judgment for costs as follows: (1) in the case of a general and unqualified affirmance of the judgment, for the respondent; (2) in the case of a dismissal of the appeal, for the respondent. . . ." (Italics added.)

the lower court nor any of the unsuccessful respondents . . . [is] entitled to overrule [the] court by analyzing . . . [its] order[] awarding costs and in part setting aside [the] order[] for judgment.' [Citation.]" (35 Cal.App.4th at p. 478.)

Bay View counters with *Whipple* v. *Cowdrey* (1965) 235 Cal.App.2d 501, 504 [45 Cal.Rptr. 343], distinguished in *Ramirez* v. *St. Paul Fire & Marine Ins. Co. supra*, 35 Cal.App.4th at page 479, which allows a trial court to give an ambiguous remittitur from the appellate court a meaning that harmonizes with the court's ruling.

In our case as in *Ramirez*, there is no ambiguity. Our opinion stated: "Appellant is awarded costs on appeal." (*In re Marriage of Jovel, supra*, H010715.) The remittitur stated: "Appellant to recover costs." As explained in *Ramirez*, "our opinion expressly provided that 'State Farm is entitled to its costs.' Therefore the remittitur, which merely reiterated this instruction, was not ambiguous. . . . In the absence of any direction in our earlier opinion to the contrary, the usual rule applies entitling State Farm to recover its costs from both Ramirez and St. Paul. The trial court lacked the authority under the circumstances to interpret our opinion to apportion costs." (35 Cal.App.4th at p. 479.)

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion. Costs are awarded to appellant.

Elia, J., and Wunderlich, J., concurred.