Filed 9/20/23  Marriage of Farrell CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re Marriage of TRAVIS and ASHLEY FARRELL. | D080127 |
| TRAVIS FARRELL, Respondent, v. ASHLEY FARRELL, Respondent; RICHARD FARRELL et al., Appellants. | (Super. Ct. No. 21FL007938C) |

APPEAL from an order of the Superior Court of San Diego County, Michelle Ialeggio, Judge.  Affirmed.

David A. Kay, for Appellants Richard Farrell and Fairfax Farrell.

1

No Appearance for Respondent Travis Farrell.

Dillon Miller Ahuja & Boss and Sunjina Ahuja; Law Offices of Michael Jason Lee and Michael J. Lee for Respondent Ashley Farrell.

## INTRODUCTION

During their marriage, Travis and Ashley Farrell borrowed funds from Travis' parents, Richard and Fairfax Farrell (the Farrells), to purchase a home in San Diego.  Travis later filed for divorce, listed the home for sale, and accepted an offer for its nearly $2 million purchase.  While the home was in escrow, the Farrells' Deed of Trust and $736,000 payoff demand emerged.  Following unsuccessful negotiations with the Farrells, Ashley joined them to the dissolution action in family court, which ordered the $736,000 in disputed funds to be sequestered in a trust account.  Travis, Ashley, and the Farrells then signed an agreement regarding escrow.

Six months later, the family court granted Ashley's request for $40,000 in attorney fees against the Farrells to be paid from the trust account.  The Farrells appeal the order, contending that they were not properly joined to the family court action, that attorney fees could not be awarded against them as third parties because all issues relating to them would be addressed in their separate civil action against Travis and Ashley, and that the family court's fee order violated the parties' escrow agreement.  Ashley responds that the Farrells forfeited their joinder objections by generally appearing in the family court, that issues relating to the Farrells remained in the family court, and that the Farrells failed to raise any argument in the family court about the fee award violating the escrow agreement.  We agree with Ashley and therefore affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Ashley and Travis Farrell married in September 2000. In July 2021, while Ashley Farrell and the couple's four minor children were visiting relatives in Michigan, Travis filed for divorce in San Diego Superior Court (family court). Travis also listed the couple's San Diego family home for sale, which quickly sold for nearly two million dollars.

During escrow, the home's title report disclosed a Deed of Trust (Deed) recorded in June 2020 by Travis' parents, Richard and Fairfax Farrell. The Deed stated that Travis and Ashley would repay the Farrells for their $121,335 loan made in 2002—when Travis and Ashley purchased the home—at zero percent interest or at interest of 50 percent of the home's equity obtained through its refinance or sale. In late July 2021, the Farrells submitted a $736,000 payoff demand to the escrow company.

Following unsuccessful negotiations between Ashley, Travis, and the Farrells, Ashley moved ex parte to join the Farrells to the dissolution action in family court and to obtain an order sequestering the $736,000 of disputed funds in a trust account so that the home sale could close. In her declaration supporting her motion, Ashley outlined facts "confirm[ing her] suspicions" that Travis was colluding with the Farrells to deprive the marital estate of this asset.

On September 3, 2021, the family court joined the Farrells "on an emergency basis, under [California Rules of Court,] Rule 5.151" and ordered the house sale funds to be placed in Travis' attorney's client trust account "pending further order of the court or agreement of all parties." Five days later, on September 8, 2021, Ashley, Travis, and the Farrells signed an escrow agreement (Escrow Agreement) with a stated effective date of September 1, 2021. The Escrow Agreement provided that the Deed would be

3

reconveyed so that the home sale could close and said that the escrow agent would not distribute the escrowed funds "unless and until there is signed written agreement between the Parties (Ashley, Travis and Trustees [the Farrells]) or a certified final Order from a Court of competent jurisdiction over Ashley, Travis and Trustee and the Escrowed Funds directing the disbursement of the Escrowed Funds." As of the time the parties filed their briefing in this appeal, the $736,000 remained escrowed in the trust account.

In December 2021, Richard Farrell was personally served with the Joinder Summons, Ex Parte Joinder Order, and other related family court filings. The same month, the Farrells filed a civil lawsuit[1] against Ashley and Travis seeking repayment under the Deed and for five additional notes, signed only by Travis and totaling over $350,000. The Farrells' civil suit seeks a joint and several judgment against Ashley and Travis and claims the marital estate is liable for the five additional notes because Travis signed them during the marriage.

Approximately one month later, Ashley filed in the family court a Request for Order requesting a bifurcated trial as to the "legitimacy and property characterization" of the Deed and the five notes, and seeking $40,000 in attorney fees from the Farrells.

In support of her attorney fees request, Ashley stated that the Farrells sought reimbursement for various loans totaling more than $1,000,000 from the community or from Ashley, alone. She stated that she and Travis had worked together to resolve many issues in the dissolution, including child support, spousal support, and child custody. And she further contended that most of the attorney fees she had incurred were caused by the Farrells and

---

[1] *Farrell v. Farrell*, San Diego Superior Court Case No. 37-2021-00051661-CU-BC-CTL.

that she could no longer afford an attorney to defend against their ongoing attacks. She outlined her financial difficulties, including that her part-time income as a piano teacher had been interrupted by a recent resurgence in COVID, that she had previously depended on Travis to manage the couple's finances, and that she was now managing her own finances and primarily responsible for raising the couple's four children.

The following day, on January 21, 2022, the Farrells filed a Notice of Related Case in both the family and civil matters. Ashley filed a response agreeing that the cases were related and requesting that the family court assign all matters related to the Deed and five notes to a single judge. She contended the family court had priority jurisdiction to hear the matters and to determine the characterization of the debt and marital assets.

On February 8, 2022, the Farrells filed a "pocket brief" asking the family court to stay its characterization determination until after the civil court had decided the alleged liabilities' " 'validity.' " In the alternative, the Farrells asked the family court to limit its review to the characterization of the alleged debts "(i.e., separate or community)" and not to determine their validity, which was being litigated in their civil action. The Farrells explained that they did not dispute the family court's authority to characterize the alleged debts, and "in fact, Claimants [the Farrells] welcome characterization, so long as their evidence is properly and fully considered."

At a February 9, 2022 hearing, the family court—pursuant to the parties' agreement—continued the matter to March 4, 2022 to determine the relatedness issues and whether the family or civil court should hear the case. The Farrells filed a supplemental "pocket brief" reiterating the same position as their February 8 pocket brief on February 23, 2022.

On March 2, 2022, the Farrells filed an objection to their joinder in the family court action, contending that they were not currently joined and should not be joined.

On March 7, 2022, the Farrells filed a Request for Order regarding their joinder objection, set to be heard on April 12, 2022.

The family court began the March 4, 2022 hearing by asking the parties to identify which issues were to be heard that day. Although the parties and court appeared to agree that relatedness was one issue on calendar, as the parties had previously agreed, the court disagreed with Travis' attorney's belief that the Farrells' contested joinder was also on calendar. The court stated it was not ruling on the Farrells' joinder objection that day and that, as far as it was concerned, the Farrells were joined. The court ultimately found that the family and civil actions were related. It further found that characterization of the alleged debts owed to the Farrells needed to be determined by the family court and that, although either the civil or family court could determine the validity of those debts, validity would be "best determined by the civil division." The family court stated that characterization needed to be determined *before* validity and noted the possibility that the family court could find the debts to be Travis' liability, alone, which would prevent the entry of a joint and several judgment against Ashley in the civil action.

Three days later, Richard Farrell filed a responsive declaration in opposition to Ashley's request for attorney fees, contending that he and his wife, Fairfax Farrell, were not properly joined and that Fairfax had never been served in the family court action. Richard further alleged that he was retired and did not have money to pay for Ashley's attorney fees, and that there was no litigation against them in the family court; rather, the Farrells'

6

civil action covered "all claims and issues" between the Farrells, Ashley, and Travis. Richard noted his belief that the pending litigation would confirm that Ashley owed the Farrells "for all of the money she has forced us to sue her for" and that the Farrells had been "unnecessarily dragged into" family court for the purpose of obtaining attorney fees against them. Although California Rules of Court, rule 5.427, subdivision (c)(2) requires a party responding to a request for attorney fees to complete and file a current Income and Expense Declaration (form FL-320), the Farrells did not file one.

In Ashley's reply brief, she alternatively requested that if the Farrells claimed they could not afford the $40,000 in requested fees, that this amount should be disbursed from the $736,000 held in Travis' attorney's trust account. Ashley additionally requested $60,000 to cover her attorney fees in the Farrells' civil action.

At a March 15, 2022 hearing, the family court addressed Ashley's request for attorney fees. When asked for their appearances, the Farrells' attorneys stated that they were making a "special appearance" because of contesting joinder, and they claimed that the Farrells had never made a general appearance in the family court action. The family court identified several previous appearances by the Farrells and proceeded to consider Ashley's request for attorney fees, stating that it would not be addressing the joinder issue during the hearing.

After considering the parties' arguments and evidence, the family court ordered the Farrells to pay $40,000 in attorney fees to Ashley, and declined to award the $60,000 in requested civil fees because Ashley made this request in her reply papers. It reasoned that because Ashley's ability to pay fees was "very limited" and because it was unable to assess the Farrells' ability to pay due to their failure to file Income and Expense Declarations, the fees would

7

be paid from the $736,000 held in the trust account. The court further ordered the Farrells to file Income and Expense Declarations. The court and parties then discussed the timing of the fees payment from the trust account, and the court ordered that the $40,000 be paid by 5 p.m. that day. The Farrells immediately petitioned for a writ of supersedeas, which we summarily denied. The Farrells then appealed.[2]

## DISCUSSION

The Farrells contend the family court erred in several ways when it ordered them to pay Ashley $40,000 in attorney fees from the trust account. They argue that they were not properly joined to the family court action, the family court could not award attorney fees against them under Family Code[3] section 2030, subdivision (d), because there were no "issues relating to" them in the family court, and the order violated the Escrow Agreement. Because we find each argument without merit, we affirm.[4]

A.    *The Farrells' General Appearances Forfeited Their Joinder Arguments*

The Farrells contend that attorney fees could not be awarded against them because they "were not properly joined" to the family court action.

---

[2]    In a May 27, 2022 letter to this court, the Farrells conceded that their appeal of the portion of the March 15, 2022 order requiring them to submit Income and Expense Declarations was moot and abandoned. Accordingly, this appeal is limited to the family court's award of $40,000 in attorney fees from Travis' attorney's trust account.

[3]    All further statutory references are to the Family Code unless otherwise indicated.

[4]    We need not address the parties' various arguments about the validity of the alleged debts owed to the Farrells because this is not an issue on appeal and, indeed, does not yet appear to have been resolved by the civil court.

8

Specifically, they allege that they did not have notice of the family court's September 2, 2021 emergency order joining them to the case, that their initial joinder was only for the limited purpose of allowing the pending home sale to close, and that they were not joined using the procedure required by California Rules of Court, rule 5.24. Ashley responds that the Farrells' joinder is not an appealable issue and is not before us on appeal. Regardless, we agree with Ashley that by generally appearing in the family court action, the Farrells forfeited their joinder objections. (See e.g., *In re Marriage of Williams* (1985) 163 Cal.App.3d 753, 759–760 [although respondent's failure to properly join pension fund contravened statute, pension fund waived joinder objection by generally appearing at hearing]; see also *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1 (*Marriage of Obrecht*) ["By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process."].)

Indeed, through their filings in family court, the Farrells generally appeared multiple times before the March 15, 2022 attorney fees order. (See *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 ["A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed."].) For example, on January 21, 2022, the Farrells filed a Notice of Related Case in the family court. Regarding their appearances, the filing indicated only that the attorney represented both "Richard Farrell and Fairfax Farrell." (Cf. *Marriage of Obrecht*, *supra*, 245 Cal.App.4th at p. 8 ["A California defendant can preserve objections to personal jurisdiction only by making a *special* appearance, i.e., an appearance for the *sole* purpose of objecting to the court's jurisdiction."].) Similarly, the Farrells' February 8 and 23, 2022 "pocket brief" filings fail to suggest any limitation on their appearances. On the

9

contrary, these briefs argued the merits of the alleged debts' validity and conceded to the family court's jurisdiction to determine characterization, which the Farrells expressly "welcome[d] . . . so long as their evidence [wa]s properly and fully considered." Accordingly, we conclude the Farrells forfeited their improper joinder objections in this appeal.

B.      *The Family Court Action Involved "Issues Relating To" the Farrells*

The family court awarded Ashley the $40,000 in attorney fees against the Farrells under section 2030. Section 2030, subdivision (a)(1) provides that in dissolution proceedings, "the court shall ensure that each party has access to legal representation, . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney[] fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." When—as is the case here—the "other party" is a third party rather than a spouse to the dissolution, any award of attorney fees "shall be limited to an amount reasonably necessary to maintain or defend the action on the *issues relating to that party*." (*Id.,* subd. (d), italics added.) " 'Related' " means " 'standing in relation; connected; allied; akin.' " (*In re Marriage of Jovel* (1996) 49 Cal.App.4th 575, 587; see also *id.* at p. 584 ["An 'issue' is '[a] single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other.' "].)

The Farrells contend the family court lacked authority to award attorney fees against them, as third parties, because all issues concerning validity of the alleged debts would be resolved in the civil court, not the

10

family court.[5] The more appropriate question, however, is whether *any* issues "relating to" the Farrells would be decided in the family court. (§ 2030, subd. (d).) We conclude the answer to that question is yes. It is undisputed that the Farrells were asserting their right to property purportedly owed to them by the marital estate. And the fact that the validity of those alleged debts would be determined in the civil court did not extinguish their interest in this property in the family court—the same court that ordered the disputed funds to be sequestered in a trust account.

Indeed, the record shows that the Farrells sought to weigh in on the characterization in family court of the alleged marital debts. Their own pocket brief filed in family court stated that they did not object to the family court deciding characterization, "so long as *their* evidence [wa]s properly and fully considered." (Italics added.) Moreover, Ashley contended in the family court proceeding that Travis *and the Farrells* were colluding to deprive the marital estate of this property. Accordingly, we conclude that issues "relating to" the Farrells remained in the family court, as required by section 2030, subdivision (d). (See e.g., *In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 871 [affirming fee award against ex-husband's new wife joined to dissolution proceeding where "issues" related to the new wife—whether husband invested in funds in which the ex-wife had a community property interest and whether he fraudulently transferred his interest in those funds to his second wife].)

---

5  The Farrells additionally contend that they were not "parties" within the meaning of section 2030, subdivision (d) because they were not properly joined to the family court action. Because, as discussed previously, we conclude the Farrells forfeited their joinder objections, we reject this argument for the same reasons.

11

C.    *The Farrells' Remaining Arguments on Appeal Are Forfeited*

The Farrells additionally complain that because the family court's order required the attorney fees to be paid from Travis' attorney's trust account, the order violated the parties' Escrow Agreement.  The crux of the Farrells' argument is that the Escrow Agreement supplanted the family court's prior order sequestering the disputed funds and that the Escrow Agreement's terms required all issues concerning the disputed funds, including validity, to be resolved by "a certified final" court order or party agreement before any funds could be disbursed.

We need not consider these arguments, however, because the Farrells failed to raise them in the family court.  (See *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264 [" '[A]s a general rule, "issues not raised in the trial court cannot be raised for the first time on appeal." ' "]; *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].)  Indeed, the Farrells did not make any argument concerning the alleged violation of the Escrow Agreement's terms in their briefing in the family court or during the March 15, 2022 hearing.[6]  Their silence in the family court on these issues is particularly glaring considering Ashley's alternative request—made both in her reply brief supporting her attorney

---

[6]    In their reply brief on appeal, the Farrells point to their March 7, 2022 lodgment of the Escrow Agreement, among other exhibits, in support of their separate request for order regarding their objection to joinder.  But merely lodging this exhibit in support of a separate request for order does not equate to raising the argument that awarding attorney fees from the trust account would violate the terms of the Escrow Agreement and thus allowing the family court an opportunity to address this new argument.

fees request and specifically discussed by the family court at the hearing—to have the attorney fees paid out of the trust account.

Moreover, even if we considered these forfeited arguments, we would reject them and conclude the family court's award of fees from the trust account was proper.  (See e.g., § 2032, subd. (c), italics added ["The court may order payment of an award of attorney[ ] fees and costs from *any type of property*, whether community or separate, principal or income."]; see also § 2010, subds. (e), (f) [family court has power to "render any judgment and make orders that are appropriate concerning . . . [t]he settlement of the property rights of the parties [and t]he award of attorney[ ] fees and costs"].)

## DISPOSITION

The order is affirmed.  Ashley is entitled to recover her costs on appeal.

CASTILLO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

13