Filed 12/23/25  Marriage of Landge and Ahir CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of NAMRATA LANDGE and SHREYAS AHIR. | |
| NAMRATA LANDGE,<br><br>        Respondent,<br><br>v.<br><br>SHREYAS AHIR,<br><br>        Appellant. | A171229<br><br>(Alameda County<br>Super. Ct. No. HF18912753) |

In the second appeal in this dissolution action, Shreyas Ahir (Husband)[1] appeals the trial court's judgment on remand.  We affirm.

BACKGROUND[2]

We quote as relevant from our prior opinion in this case: "Husband and respondent Namrata Landge (Wife) married in December 2013.  In October

_____

[1] We recognize the marriage was terminated years ago in a bifurcated proceeding.  Purely for convenience, we will use the terms "Husband" and "Wife."

[2] We grant Husband's unopposed April 22, 2025 request for judicial notice of filings in the prior appeal.

1

2014, the marital residence was purchased. The down payment was paid with $74,496 of Husband's separate property. The deed was in Husband's name only . . . . [¶] Wife filed for divorce in July 2018. The marital status was bifurcated from the division of property, and the marriage was terminated in December 2019. [¶] A trial on reserved issues, including the characterization of the marital residence, was held in September 2021. The trial court ruled the home was presumptively community property because it was purchased during the marriage . . . . The court divided the approximate equity in the home between the parties, with reimbursement to Husband for his $74,496 separate property down payment." (*In re Marriage of Landge and Ahir* (Oct. 27, 2022, A164150) [nonpub. opn.] (*Landge and Ahir*).)

Husband appealed, challenging solely the court's determination that he was not entitled to appreciation traceable to his separate property contribution. (*Landge and Ahir, supra*, A164150.) This court reversed, relying on *In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411 (*Bonvino*), which held that separate property contributions to the purchase of community property were entitled to reimbursement of " 'the equity paid from separate property plus the appreciation attributable to separate property.' " (*Landge and Ahir, supra*, A164150, quoting *Bonvino*, at p. 1427.)

In 2023, on remand, trial was held.[3] Following trial, the court issued a proposed statement of decision and, after Husband filed objections, a final statement of decision. Judgment issued and Husband appealed.

---

[3] Husband appeared in propria persona at the 2023 trial. He is represented by counsel on appeal.

## DISCUSSION

I. *Division of the Marital Home*

  A.   *Additional Background*

At trial on remand, Wife submitted an updated appraisal valuing the marital home at $895,000, an increase from the $860,000 valuation found at the 2021 trial. Husband did not contest the amount of the current valuation but argued the date of valuation should be the time of the first trial.

Wife also presented an expert in family law forensic accounting. The expert testified as to his understanding of this court's decision in the first appeal: "I understand that the Court of Appeal[] allowed for an appreciation right to the separate interest, separate contribution toward the purchase of the property. So where the trial court originally offered only a reimbursement for the down payment, the appeals court said there can be an appreciation related to that contribution."

The expert testified that he calculated the separate property reimbursement amount by first determining the percentage of the purchase price funded by the separate property contribution. He then subtracted the purchase price from the current fair market value to determine the total amount of appreciation in the home. He then multiplied the percentage representing the separate property contribution by the total appreciation to determine the portion of appreciation attributable to the separate property contribution. Finally, he added the separate property contribution to the appreciation attributable to the separate property contribution to determine Husband's total separate property interest in the home.

In its final statement of decision, the trial court found the current appraised value was the appropriate valuation. The court accepted the

3

calculations of Wife's expert as to Husband's separate property interest in the home.

B. *Post-Separation Mortgage Payments*

On appeal, Husband asserts that he has made post-separation mortgage payments and the equity accrued by these payments should not be attributed to the community. Husband argues that "[t]he issue of post-separation payments was not raised nor resolved in the first appeal, and so is not controlled by the law of the case."

Even so assuming, it *is* controlled by the law of forfeiture and the binding directions we issued for remand. The parties separated at some point prior to the June 2019 dissolution date. The first trial was held more than two years later, in September 2021. Any issue Husband wanted to raise as to mortgage payments made after separation and up to the date of the first trial had to be raised at that time. In our opinion resolving Husband's appeal from the first trial, however, we stated, "The trial court impliedly found the loan proceeds relied on community property and mortgage payments were paid for by the community, and Husband does not contend otherwise on appeal." (*Landge and Ahir, supra,* A164150.) Husband therefore forfeited any challenge regarding post-separation mortgage payments made up to the time of the first trial, and our direction reflected this forfeiture by instructing that "*on remand all equity contributions above $74,496 shall be deemed to have been paid for by the community.*"[4] (*Landge and Ahir, supra,* A164150,

---

[4] In light of these binding directions and the finality of our opinion in the first appeal, any claim by Husband now that he did in fact preserve this challenge in the first appeal is raised too late. (See *Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 314 ["The time . . . to have called our attention to any alleged omissions or misstatements in our original

4

italics added.)  The trial court was bound by this direction.  (*Ruegg & Ellsworth v. City of Berkeley* (2023) 89 Cal.App.5th 258, 264 (*Ruegg*) [" ' "The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void" ' "].)

C.    *Formula*

Relatedly, Husband argues that the community should only receive a proportionate share relative to the amount of community funds that in fact contributed to the equity.  Husband points to language in this court's prior opinion that the community's proportionate share is based on the equity paid by the community.  (This also includes equity deemed to have been paid by the community, as explained above.)  Husband complains that, contrary to our direction, the formula used by Wife's expert and the trial court credits the portion of the purchase price financed by the loan to the community, even though it is not equity paid by the community.  In effect, this issue asks whether the trial court acted in conformity with our prior opinion.  "We review de novo a claim that the trial court did not follow the directions contained in the dispositional language of our previous opinion.  [Citation.] We look to the wording of our directions, read in conjunction with the opinion as a whole." (*Ruegg, supra*, 89 Cal.App.5th at p. 264.)

In addition to the discussion of equity contributions, our prior opinion noted that the mortgage loan financing the remainder of the purchase price was attributable to the community and, "[u]nder *Bonvino*, the property should be divided in proportion to the separate and community contributions." (*Landge and Ahir, supra*, A164150.)  Wife's expert explained,

opinion was by petition for rehearing within 15 days of the filing of the decision, not more than a year later.  (Cal. Rules of Court, rule 8.268(b).)"].)

5

"The *Bonvino* case dealt with a property that the loan had been paid down entirely during the marriage with property. So there was no loan remaining. [¶] And in these cases in the reference here [*Bonvino*], it says that it should be apportioned based on the contribution toward purchase; specifically stating, to calculate the separate property, you take the separate property contribution toward purchase. . . . [¶] In the case we're currently dealing with, . . . per the Court of Appeal[], 'The trial court impliedly found that the loan proceeds relied on community property . . . [.]' That is a reference to the loan that was taken in this case during marriage, not before marriage, my understanding is presumptively to be treated as a community property contribution to the purchase and not a separate property contribution." The expert continued, "[M]y understanding is the application intended by the Court of Appeal[] and the trial court was everything, including the loan, that was paid towards this property beyond the [$]74,000 of separate is to be determined or considered community contribution." The trial court impliedly adopted this construction of our prior opinion.

We conclude this reasoning is consistent with the directions in our prior opinion. Husband has failed to demonstrate error in the trial court's formula to calculate his separate property interest in the home.

D. *Valuation Date*

Husband argues the trial court erred in finding the appropriate valuation date to be the date of the 2023 trial rather than the original 2021 trial. We reject the challenge.

"Family Code section 2552 generally requires the trial court to value the community assets and liabilities 'as near as practicable to the time of trial.' ([Fam. Code,] § 2552, subd. (a).)" (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 309, fn. omitted (*Oliverez*).) "Family court is a court of

6

equity. [Citation.] While the language of [Family Code] section 2552 is clear, the trial court can find 'equity require[s] a valuation as near as practicable to the court proceeding *in which the property is actually divided*,' [citation] such that [Family Code] section 2552, 'must be interpreted as requiring community property to be divided at its value as near as practicable to the court proceeding in which a *proper* division takes place. While normally it will be at trial, it may also be on remand after appeal.' [Citation.] The court's decision rests on its evaluation of the facts in the specific case before it." (*Oliverez*, at p. 310.) We review the court's selection of a valuation date for abuse of discretion. (*Id.* at p. 313.)

The trial court reasoned, "Based upon the two-year gap since [the 2021] trial in this matter, the Court finds it would not be equitable to allow one party the windfall of calculating the community and separate interests in the former family residence based on a 2021 value." Husband argues the trial court failed to provide specifics about why it would be a windfall and further argues it would not in fact be a windfall "when it is [W]ife who now benefits by the accumulation of two years of equity based on post-separation mortgage payments made exclusively by Husband."

In fact, the equity accruing after the 2021 trial was not factored into the 2023 judgment. To determine the total amount of equity in the home, the trial court subtracted the amount remaining on the mortgage from the house's fair market value. The figure used for the amount remaining on the mortgage was the same as that used at the 2021 trial. As Wife's expert explained, "The trial court and the Court of Appeal determined that everything beyond [$]74,496 should be considered contributions by the community. The debt value that I've used to calculate equity was the value that was used and specified in the trial court as the debt as of that time.

7

I haven't update[d] that . . . debt value. If I had, it would actually increase the community's interest because there would be more equity in the property. But I have not accounted for post trial . . . debt payments."

Thus, Wife is not benefitting from any additional equity attributable to Husband's mortgage payments since the 2021 trial. Husband fails to demonstrate the trial court abused its discretion in selecting the 2023 valuation date. (See *Oliverez, supra*, 33 Cal.App.5th at p. 313 ["Drawing every inference in favor of the trial court's decision as we are required to do, we agree that . . . the age of the case, the well-known appreciation of real property that occurred over the years while the litigation was pending in the trial court and on appeal, and the obsolescence of the 2012/2013 property valuation, provided a sufficient basis for the trial court to decide that it was equitable to set the date for valuation of the properties in dispute at the date of remand and Judgment, not the date of the 2012/2013 trial"].)

E. *Education Expense Offset*

In the 2021 judgment, the trial court found Wife owed a $48,414 reimbursement to the community for her share of her education expenses paid during marriage. The court deducted this amount from the reimbursement Husband owed Wife for her share of the family home. In the 2023 judgment, the trial court also deducted $48,414 from the amount Husband owes Wife for her share of the family home.

On appeal, Husband argues the trial court failed to include statutory interest accruing since the 2021 judgment. (See Fam. Code, § 2641, subd. (b)(1).) Husband does not claim he raised this issue at trial or in his posttrial closing argument brief, even though the $48,414 figure was used by Wife's expert in both his testimony and his written report. Instead, Husband

8

apparently first raised this issue after the trial court issued a proposed statement of decision, in his objections.

This was too late. "A statement of decision . . . covers only issues litigated in the case." (*Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 750.) A party cannot, "under the guise of an objection to the court's failure to resolve a controverted issue, . . . [seek] to raise a new argument. Because the argument was not litigated at trial, . . . the trial court was under no obligation to address it. [¶] Nor are we." (*Id.* at p. 751.)

II.    *Fee Award*

The trial court awarded "need-based attorney fees and costs" to Wife in the amount of $40,000. On appeal, Husband challenges solely the reasonableness of the amount awarded.

Wife testified at trial that she paid "[m]ore than $50,000" in attorney fees over the course of the litigation. The trial court found "[e]ach party paid between $50,000 to $60,000 to attorneys in this matter." Husband complains that Wife failed to submit billing records, but such records are not necessarily required. "Direct evidence of the reasonable value of an attorney's services need not be introduced 'because such evidence is necessarily before the trial court which hears the case.' " (*In re Marriage of McQuoid* (1991) 9 Cal.App.4th 1353, 1361.) " ' "[W]hen the trial court is informed of the extent and nature of the services rendered, it may rely on its own experience and knowledge in determining their reasonable value." ' " (*In re Marriage of Jovel* (1996) 49 Cal.App.4th 575, 588.)

"[T]he trial court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke* (2012) 203

9

Cal.App.4th 964, 975.) The trial court was familiar with the proceedings and found both parties incurred fees of more than $50,000. In light of our deferential standard of review, Husband has failed to establish the trial court abused its discretion in determining the reasonable amount of fees.

III.    *Capital Gains Tax*

The 2023 judgment found the parties had a net balance of approximately $88,000 in a brokerage account on the date of separation, and that after separation Husband transferred approximately $44,000 to a checking account. The trial court found both the remaining balance in the brokerage account and the funds transferred from the brokerage account to the checking account were community funds.

Husband argues that capital gains taxes he paid upon the sale of the securities should be charged to the community. His brief does not identify the amount of capital gains taxes paid, much less provide supporting record citations. Instead, Husband cites only to a pretrial brief in which he appeared to claim that he paid approximately $28,000 in taxes on securities worth $44,000, relying primarily on an unverified and unexplained worksheet purporting to calculate the taxes. As Husband cites no evidence that he in fact paid any capital gains taxes on the securities sold, we need not decide whether the trial court should have assessed any such taxes to the community.

## DISPOSITION

The judgment is affirmed.  Wife shall recover her costs on appeal.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A171229)

11