Filed 3/30/26 (see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br>v.<br><br>MARK NIELSEN,<br><br>         Defendant and Appellant. | A170363<br><br>(Mendocino County<br>Super. Ct. Nos. 24CR03321,<br>23CR02514, 23CR02511,<br>23CR01950) |

Defendant agreed to a negotiated disposition of several cases, and the trial court sentenced him to the upper term in the principal case. Defendant appeals, arguing the trial court did not understand that it had to apply the low term presumption in Penal Code[1] section 1170, subdivision (b)(6) (section 1170(b)(6)) when sentencing him. Defendant also contends that the trial court failed to correctly determine and state his custody credits in one case. We affirm the judgment.

## BACKGROUND

In March 2022, in case No. 23CR02511, defendant suffered convictions for evading an officer with willful or wanton disregard (Veh. Code, § 2800.2, subd. (a)) and driving or taking a vehicle without the owner's consent

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

(Veh. Code, § 10851, subd. (e)).  He was sent to prison and was released on Post Release Community Supervision (PRCS) in May 2023.

In September 2023, in case No. 23CR01950, defendant pleaded no contest to a misdemeanor violation of willfully inflicting corporal injury resulting in a traumatic condition upon his spouse (§ 273.5, subd. (a)).  The court placed him on formal probation for three years.

In October 2023, in case No. 23CR02514, defendant was charged by information with unauthorized taking or driving a vehicle with qualifying priors (Veh. Code, §§ 10851, subd. (a), 666.5, subd. (a) (count 1)); misdemeanor unlawfully operating a vehicle without an interlock device while his driving privileges were restricted (Veh. Code, § 23247, subd. (e) (count 2)); and misdemeanor driving when his license was suspended or revoked for a driving-under-the-influence offense (Veh. Code, § 14601.2, subd. (a) (count 3)).  The People alleged that defendant suffered two prior convictions pursuant to Vehicle Code section 14601.2, subdivision (d)(2), and further alleged several circumstances in aggravation under California Rules of Court, rule 4.421.

In January 2024, in case No. 24CR03321, defendant was charged by information with transport or sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a) (count 1)).  The People alleged an out-on-bail enhancement (§ 12022.1) and numerous circumstances in aggravation under California Rules of Court, rule 4.421.

Also in January 2024, defendant was charged by a third amended second petition for revocation of PRCS in case No. 23CR02511 with several violations of law and failures to report to probation, committed on various occasions.  And in case No. 23CR01950, the People filed a third amended

petition similarly alleging a probation violation based on several violations of law and failures to report to probation, committed on various occasions.

In case No. 23CR02514 and pursuant to a global disposition, defendant pleaded no contest to count one (Veh. Code, § 10851, subd. (a)), and he admitted the section 666.5 priors and four circumstances in aggravation under California Rules of Court, rule 4.421(b)(2)–(5). In case No. 24CR03321, pursuant to the global disposition, defendant pleaded no contest to added count two for possession for sale of methamphetamine (Health & Saf. Code, § 11378).

In case No. 23CR02511, the court found a PRCS violation based on the pleas in case Nos. 23CR02514 and 24CR03321, and the court likewise found a violation of probation in case No. 23CR01950.[2]

Before sentencing, defendant submitted a report from a substance abuse specialist, several letters, and certificates from courses that he had completed. The substance abuse specialist's report detailed defendant's history of substance abuse and trauma. The report conveyed, "[Defendant] states that he was a victim of physical, emotional, mental abuse, and severe neglect as a child. [Defendant] reports that he has never received counseling and believes his using is directly related to his childhood trauma." Defendant disclosed that his "rite of passage" was using and dealing drugs because his father and uncles "were heavy users and drug dealers." (*Ibid.*)

Defendant's stepsister wrote a letter describing defendant's childhood. She met defendant when he was five and his two brothers were teenagers. She explained that defendant's father was an addict and he gave "the teenage

---

[2] A fifth case in which defendant was alleged to have violated a court order to prevent domestic violence (§ 273.6) was dismissed as a part of the global disposition.

3

boys," including defendant's older brother, drugs when they were young to go and rob homes and bring the stolen items back to him. Defendant's father paid the kids in drugs or money. Defendant's oldest brother, who was verbally abusive, raised defendant, and defendant's mother was an alcoholic who worked long hours. In her letter, defendant's stepsister asked that the court give defendant a chance to get the help and treatment he deserved, and she stated, "[Defendant's] child[hood] trauma has led him to live the only way he knows how!"

In the presentence report for principal case No. 23CR02514, probation marked five factors in aggravation (Cal. Rules of Court, rule 4.421(b)(1)–(5)) and one factor in mitigation. As the mitigating factor, probation stated defendant "suffers from poly-substance addiction (mainly methamphetamine), which could have contributed to the instant offense." The probation officer listed defendant's history of drug use, his father's abuse, defendant's 29 prior criminal convictions, and his state prison sentence for two felony convictions two years prior. Probation believed that there were no factors overcoming defendant's presumptive ineligibility for probation and that a split sentence with mandatory supervision was not appropriate given defendant's poor prior performance on probation and PRCS. Probation recommended that the court sentence defendant to the upper term of four years in prison in case No. 23CR02514.

At the sentencing hearing in February 2024, defense counsel requested that the court commit defendant to a residential substance abuse treatment program. Defendant also read a letter to the court in which he requested a chance for drug treatment and stated that his "drug use [was] the reason for [his] criminal history in full."

The prosecutor argued for the upper term sentence. The prosecutor noted that defendant had admitted several circumstances in aggravation and had a lengthy criminal history. He observed that the probation report only mentioned one circumstance in mitigation and "the aggravating circumstances outweigh that both in numbers as well as significance." Additionally, the prosecutor argued that the court should not impose a split sentence with mandatory supervision (§ 1170, subd. (h)(5)) because of defendant's criminal history and numerous PRCS and probation violations.

The court announced that it had reviewed the probation report and defendant's submissions. Addressing defendant, the court acknowledged the "drug addiction cycle," and continued, "I understand your history. I understand you have had a pretty traumatic childhood based on the letters I have reviewed." The court said that when defendant was released on bail in case No. 23CR02514, it had hoped he would show behaviors consistent with trying to get his life on track, but he instead committed another crime. The court found that defendant's criminal history with six prior felonies was "very lengthy" and did "not appear to have any break, really, in criminality from the time [defendant was] a juvenile until [that day]." Given defendant's numerous prior felonies and his history of "nothing but failure to report, failure to follow through and getting sent to local prison commitments," the court stated that it would not grant probation, it denied mandatory supervision, and it sentenced defendant to the upper term of four years in Mendocino county jail (local prison) in the principal case No. 23CR02514.

In case no. 24CR03321, the court denied a split sentence with mandatory supervision and imposed a two-year middle term jail sentence concurrent to the principal term.

5

In case no. 23CR02511, the court terminated defendant's PRCS as unsuccessful and imposed a 180-day sentence in Mendocino county jail with credit for 59 days, concurrent to any other sentence. The court also terminated defendant's probation in case no. 23CR01950 as unsuccessful and ordered him to serve 60 days in Mendocino county jail with 30 days of credit, concurrent to any other sentence.

Defendant timely appealed the court's sentencing order.

## DISCUSSION

### I. Section 1170(b)(6)

Defendant argues that remand is required because it is at best ambiguous whether the court understood section 1170(b)(6)'s statutory obligation to consider the presumptive lower term where defendant's childhood trauma contributed to the offense. The People disagree, arguing that nothing in the record affirmatively shows the court misunderstood its sentencing discretion. The parties also debate whether the record contains an initial showing that defendant's childhood trauma was a contributing factor to the principal offense. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 (*Fredrickson*) [some initial showing must be made to section 1170(b)(6) presumption].) We conclude that defendant made a sufficient initial showing to trigger section's 1170(b)(6) presumption, but the record does not raise serious doubts or show that the court was unaware of, or failed to apply, section 1170(b)(6). (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 *(Caparrotta).)*[3]

---

[3] Given our conclusion, we do not address defendant's additional claims that his sentencing challenge is not subject to forfeiture or that his trial counsel rendered ineffective assistance by not objecting to the court's alleged failure to apply the low term presumption under section 1170(b)(6).

6

We review a court's sentencing choices for abuse of discretion.  (See *Fredrickson*, *supra*, 90 Cal.App.5th at p. 988.)  A defendant is entitled to a sentencing decision made in the exercise of informed discretion, and a court that is unaware of the scope of its discretion cannot exercise informed discretion.  (*People v. Salazar* (2023) 15 Cal.5th 416, 424.)  We presume the court knows and applies the applicable law, absent evidence to the contrary.  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see also *People v. Ochoa* (2020) 53 Cal.App.5th 841, 852 [appellate court assumes trial court understood and properly exercised its sentencing discretion, and error will not be presumed from a silent record]; Cal. Rules of Court, rule 4.409 ["[U]nless the record affirmatively reflects otherwise," appellate court presumes sentencing court considered all relevant factors in California Rules of Court].)  The burden is on the party attacking the sentence to show the court misunderstood its sentencing authority.  (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 988.)

Effective January 1, 2022, section 1170(b)(1) makes the middle term the presumptive sentence for a determinate term of imprisonment.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.)  Section 1170(b)(2) authorizes an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  And section 1170(b)(6) provides that, notwithstanding section 1170(b)(1), "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of

7

the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

As applicable here, to trigger section 1170(b)(6)'s presumption, defendant must point to some initial showing in the record that his childhood trauma was a " 'contributing factor' " in the commission of the offense. (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 991.) *Fredrickson* suggested a sufficient initial showing is made when the "record and/or arguments are sufficient to put a trial court on notice," or where the record contains a "clear indication" that a defendant's childhood trauma may have been a contributing factor in his or her commission of the underlying offense. (*Id.* at p. 994.)

The requisite initial showing was made here. The presentence report did not check the box under mitigating circumstances to indicate that "[t]he defendant experienced . . . childhood trauma . . . and it was a factor in the commission of the crime." However, defendant's sentencing submissions showed that he suffered abuse and trauma in childhood, including because his father and uncles "were heavy users and drug dealers" and using and dealing of drugs was a "rite of passage." Defendant stated that "his [drug use] is directly related to his childhood trauma," his "drug use [was] the reason for [his] criminal history in full," and probation acknowledged that defendant's drug addiction could have contributed to the crime. Defendant's stepsister submitted details about his traumatic childhood, including that defendant's father gave the "teenage boys" drugs to rob homes and bring stolen items back to him. She wrote, "Please let my brother get the help he deserves as his child[hood] trauma has led him to live the only way he knows how!" The record thus contains a sufficient initial showing to establish that

8

defendant's childhood trauma contributed to his drug addiction and to his convictions in this case.

We nonetheless reject defendant's claim that remand is required because it "is ambiguous, at best" whether the court was aware of its statutory obligations under section 1170(b)(6). Defendant relies on authorities addressing different sentencing laws that conclude remand is appropriate where the record affirmatively, but perhaps not conclusively, suggests the trial court misunderstood the scope of its sentencing discretion—i.e., where the record is ambiguous and raises "serious doubts" about the court's understanding of its sentencing discretion. (*People v. Ochoa, supra,* 53 Cal.App.5th at pp. 852–854 [statutory obligation to consider "youth-related mitigating factors" in sentencing minor defendant who committed first degree murder]; *People v. Panozo* (2021) 59 Cal.App.5th 825, 839 (*Panozo*) [statutory obligation to consider defendant's service-related posttraumatic stress disorder as mitigating factor for probation and sentencing].) For the reasons set forth below, the record here fails to raise "serious doubts" (*People v. Ochoa,* at p. 854) about the court's understanding of its sentencing discretion.

First, although the court did not make an express finding that childhood trauma was a factor in the commission of the principal offense at the sentencing hearing, the record strongly supports an inference that the court considered it as a mitigating factor. It is true that defense counsel did not specifically mention section 1170(b)(6), and that probation stated defendant's drug addiction could have contributed to the offense but did not check the box listing childhood trauma as a mitigating factor. However, defendant's sentencing submissions clearly conveyed that his childhood trauma led to his drug addiction and crimes. And indeed, defendant concedes

9

that probation's opinion that defendant's "poly-substance addiction could have contributed to the offense[s] . . . is tantamount to an express finding that [defendant's] childhood trauma played a role in his offense." The trial court stated that it understood "the drug addiction cycle," defendant's history, and that he had a traumatic childhood based on the letters submitted. It also stated, "I read the letters, I understand and listen to the arguments and your letter, I am empathetic to your situation," and the court's sentencing minute order provides: "Factors in mitigation vs. aggravation stated." On this record, defendant appropriately concedes that the court understood his childhood trauma was a mitigating factor.[4]

Next, defendant claims that it is ambiguous whether the court understood that section 1170(b)(6) made the low term presumptive because the court expressly mentioned his childhood trauma but did not cite section 1170(b)(6) or make express findings thereunder. We disagree. After discussing defendant's drug addiction and childhood trauma, the court detailed defendant's extensive criminal history, which had no "break, really, in criminality from the time [defendant was] a juvenile until today." Nothing in the court's acknowledgement of defendant's childhood trauma suggests that it misunderstood its obligation to apply section 1170(b)(6), particularly when this acknowledgement was followed by a recitation of factors such as defendant's commission of yet another offense (case No. 24CR03321), defendant's "very lengthy[,]" uninterrupted criminal history, and his history

---

[4] After the enactment of the 2022 amendments to section 1170(b), the following is a mitigating factor under the California Rules of Court: "The defendant experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime[.]" (Cal. Rules of Court, rule 4.423(b)(3).)

consisting of "nothing but failure to report, failure to follow through," and custodial sentences.[5] (See *Caparrotta, supra,* 103 Cal.App.5th at p. 905.) Instead, the record supports the inference that the court considered defendant's childhood trauma as a mitigating factor and weighed it against aggravating factors in the balancing that section 1170(b)(6) requires. In these circumstances, defendant has not pointed to anything that raises "serious doubts" or affirmatively indicates that the court misunderstood its sentencing discretion. (*People v. Ochoa, supra,* 53 Cal.App.5th at p. 854.)

Furthermore, defendant's sentencing took place more than two years after section 1170(b)(6) and the amended requirements for imposing an upper term sentence under section 1170(b)(2) became effective as part of the same statute. (See Stats. 2021, chs. 695, § 5, 731, § 1.3.) The trial court here undisputedly followed section 1170(b)(2) by accepting defendant's admissions to the aggravating factors that the People had alleged against him during the plea hearing and subsequently considering those factors to impose the upper term. The 2022 amendments to section 1170(b) constituted significant changes to determinate sentencing procedures (*People v. Falcon* (2023) 92 Cal.App.5th 911, 918, 925 [2022 amendments "significantly altered" section 1170(b) and the Determinate Sentencing Law], disapproved on other grounds in *People v. Lynch* (2024) 16 Cal.5th 730, 751, 768–769); the fact that the court followed the amendments to section 1170(b)(2) suggests that it understood the law and did not overlook section 1170(b)(6), a provision that plainly appears within amended section 1170(b). Defendant has not persuaded us that the court understood its obligations under

---

[5] The dissent views the court's statements as providing only reasons for rejecting probation, but we do not think this is a fair reading of the record. The court's minute order indicates "[f]actors in mitigation vs. aggravation stated,"

11

subdivision (b)(2), but inexplicably declined to read further down the page (or screen) to take in (b)(6).

Although not factually on all fours, we find *Caparrotta*, *supra*, 103 Cal.App.5th 874, a case relied on by defendant, to be analogous. Caparrotta expressly argued section 1170(b)(6)'s presumption applied because of his childhood abuse in his sentencing memorandum, and the trial court imposed the middle term after stating that it had considered the aggravating and mitigating factors. (*Id.* at pp. 904–905.) He argued the trial court erred because it failed to specifically reference the section 1170(b)(6) presumption or make express findings thereunder. (*Ibid.*) The appellate court disagreed, concluding that "nothing in the record establishes that the trial court was unaware of its obligations under . . . section [1170(b)(6)] or that it failed to apply that provision. 'In the absence of evidence to the contrary, we presume that the court "knows and applies the correct statutory and case law." ' [Citation.] Thus, although the trial court did not specifically mention . . . section [1170(b)(6)], it is presumed to have known of the provision. Moreover, because Caparrotta highlighted . . . section [1170(b)(6)] in his sentencing memorandum, we presume that the trial court was aware Caparrotta was seeking to benefit from that provision." (*Id.* at p. 905.) *Caparrotta* rejected the argument that a trial court must expressly state that, weighing the applicable factors, the " 'imposition of the lower term would be contrary to the interests of justice.' " (*Id.* at p. 906 & fn. 14.)

We acknowledge that, unlike in *Caparrotta*, defendant did not submit a sentencing memorandum expressly arguing that section 1170(b)(6) applied. Unlike the dissent (Dissent, pp. 4–5), however, we do not find this difference dispositive. This is because defendant's sentencing materials discussed his childhood trauma and set forth how his childhood trauma led to his crimes

such that the trial court was "on notice" (*Fredrickson, supra,* 90 Cal.App.5th at p. 994) that defendant's childhood trauma may have been a contributing factor to the crimes in this case. Faced with circumstances that were sufficient to put the court on notice (as set forth in defendant's submissions, which the court stated it had considered), the record supports the inference that the court recognized and treated defendant's childhood trauma as a mitigating factor, and nothing in the record suggests the court was unaware of section 1170(b)(6).[6]

Finally, relying on *Fredrickson*, defendant seems to suggest that we should remand this case for a new sentencing hearing because the court did not make express findings on the record under section 1170(b)(6). The dissent seems to agree, critiquing the court's failure to expressly state that "childhood trauma was a contributing factor to the commission of the felony offenses" and the aggravating circumstances outweigh the mitigating circumstances so that imposition of the lower term would be contrary to the interests of justice. Per *Fredrickson*, the record must "affirmatively show compliance" with section 1170(b)(6) after a defendant makes an initial

---

[6] The dissent concludes this record is akin to the record deemed ambiguous in *Panozo*. There, sections 1170.9 and 1170.91 obligated the trial court to consider qualifying service-related PTSD as a mitigating circumstance in making discretionary sentencing choices. (*Panozo, supra,* 59 Cal.App.5th at pp. 834–836.) The defendant argued his crimes were the byproduct of his service-related PTSD, but the sentencing briefs and arguments did not reference sections 1170.9 or 1170.91 or suggest that the court was obligated to consider service-related PTSD as a mitigating factor. (*Panozo,* at pp. 837–838.) Importantly—and in stark contrast to this case — the trial court in *Panozo* listed the mitigating and aggravating factors it considered on the record, but the defendant's service-related PTSD was not among them. (*Id.* at pp. 838–839.) The record before us does not "strongly suggest[] the trial court was unaware of its mandatory sentencing obligations" (*id.* at p. 832) as did the record in *Panozo*.

showing triggering the statutory presumption (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 992), and *Fredrickson* suggests that trial courts are obligated to make express findings under section 1170(b)(6). (E.g., *Fredrickson*, at p. 993 ["Prior caselaw does not clarify what initial showing would be sufficient to obligate a trial court to make an express finding regarding the [s]ection 1170(b)(6)(B) lower term presumption"].) *Fredrickson* held that a defendant must make an initial showing of section 1170(b)(6)'s applicability to trigger the low term presumption and the requirement of an affirmative showing of compliance with the statute, and concluded that Fredrickson had failed to meet her initial burden. (*Id.* at pp. 992, 994.) *Fredrickson*'s reference to a trial court making "express finding[s]" after a defendant's initial showing was therefore dictum, which the dissent does not dispute.

We decline to hold that a trial court's failure to make express findings under section 1170(b)(6) requires remand regardless of whether the record affirmatively demonstrates that the trial court misunderstood the scope of its sentencing discretion, because defendant has not squarely asked us to do so. The argument defendant pursues is that "the record is at least ambiguous that the court understood section [1170(b)(6)]'s statutory obligation to consider the presumptive low term where a super mitigant contributed to the offense." The answer to the question of whether a trial court must make specific express findings under section 1170(b)(6) is not so obvious that we deem it prudent to resolve the issue in the absence of reasoned briefing squarely addressing the issue. Section 1170 requires a statement of "facts and reasons" or "reasons" supporting a court's sentencing choice (*id.* at subds. (b)(5), (c)), and defendant does not maintain that the trial court violated this provision. Where a statute requires a statement of reasons,

14

court rules require a judge to "state in simple language the primary factor or factors that support the exercise of discretion," and provide "[t]he statement need not be in the language of the statute or these rules." (Cal. Rules of Court, rule 4.406.) Relevant factors enumerated in the California Rules of Court will be deemed to have been considered by the court unless the record affirmatively reflects otherwise (*id.* at rule 4.409), and *Caparotta* rejected the argument that section 1170(b)(6) requires a court to make an express finding that " 'imposition of the lower term would be contrary to the interests of justice.' " (*Caparotta*, *supra*, 103 Cal.App.5th at p. 906 & fn. 14.) Defendant acknowledges *Caparotta*'s rejection of an express finding requirement, and discusses neither of the applicable Rules of Court. While *Fredrickson* can be read to suggest that express findings tracking the statutory language are required after the initial showing is made, the holding of *Fredrickson* did not go so far because the court ultimately held that Fredrickson failed to make the requisite initial showing. (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 994.) Formal incantation of the statutory language is unnecessary where the record shows, in substance, that the court followed the dictates of the statute.

In sum, we do not agree with defendant's claim that the record raises serious doubts that the court understood the scope of its sentencing discretion. "Absent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez*, *supra*, 10 Cal.5th at p. 1042.)

## II. Custody Credits

Defendant next contends that the court failed to state his actual and conduct credits in case No. 23CR01950 when it terminated his probation and ordered him to serve 60 days in county jail concurrent to "any other sentence." The People believe this issue is moot because the court terminated

15

defendant's probation and this court cannot grant any effective relief. Defendant responds that he was sentenced in multiple cases and he is still serving time, so "it is possible" a correction of credits could affect his release date, although he makes no effort to explain how this would occur. Because the concurrent 60-day jail sentence at issue would have been completed by the date of this appeal even without any custody credits, we agree with the People that the issue of custody credits for case No. 23CR01950 is moot.[7]

## DISPOSITION

The judgment is affirmed.


BROWN, P. J.


WE CONCUR:


STREETER, J.


*People v. Nielsen* (A170363)

---

[7] Defendant made additional arguments regarding alleged deficiencies in the court's calculation of actual and conduct credits in case No. 24CR03321 and in case No. 23CR02511 in his opening brief. In his reply brief, defendant conceded that the augmented record in this case shows a "partial correction" of his credits, and he pursued only the argument that the court failed to state his actual and conduct credits on the record in case No. 23CR01950. Defendant also conceded arguments that challenged the validity of his plea after the People pointed out that he had not obtained a certificate of probable cause. We do not address the claims defendant has conceded.

**GOLDMAN, J**., Dissenting.

I disagree with the majority's repudiation of the standard our Division Five colleagues set forth in *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991 (*Fredrickson*); namely, that the record "must 'affirmatively' show compliance with [the] statutory sentencing mandate" when it has been triggered "by an 'initial showing' of the applicability of the statute." On the record before us, I find the odds that the trial court silently applied the lower term sentencing presumption under section 1170(b)(6) before imposing the upper term sentence recommended by the probation department vanishingly small. No one mentioned it. The probation report did not identify childhood trauma as a mitigating circumstance, and defense counsel did not object or argue that it was. On appeal, the Attorney General maintains the trial court properly "made no finding" that childhood trauma was a contributing factor to the offense because there was insufficient evidence of a connection. While I agree with the majority that, contrary to the Attorney General's argument, there was enough evidence to trigger the presumption, I cannot join its supposition that the trial court must have reached the same conclusion when no one even raised the issue. I would remand so the trial court can afford Nielsen the sentencing consideration that the Legislature has prescribed in this circumstance.

## I.

## A.

In articulating the standard of review applicable to a claim that the trial court failed to apply the lower term presumption under section 1170(b)(6), *Fredrickson* followed two cases applying a like standard under sections 1170.9 and (later also) 1170.91, which require a court to consider a defendant's service-related post-traumatic stress disorder (PTSD)

1

as a mitigating factor in evaluating whether to grant probation and in selecting the appropriate determinate term.  (See *People v. Bruhn* (1989) 210 Cal.App.3d 1195, 1199–1200 (*Bruhn*); *People v. Panozo* (2021) 59 Cal.App.5th 825, 836–837 (*Panozo*).)  What those statutes have in common with section 1170(b)(6) is that they are instances in which the Legislature determined that courts must consider specific factors that may reduce a defendant's culpability or otherwise warrant a reduced sentence.  (See *Bruhn*, at p. 1199 [noting the Legislature's " 'strong concern [that] emotionally affected Vietnam veterans be afforded every opportunity to get meaningful rehabilitative treatment in a facility specifically designed to deal with their unique and complex disorder' "].)  Under section 1170(b)(6)(A)–(C), the court is required to apply a lower term presumption if "any of the following was a contributing factor in the commission of the offense":  the defendant experienced psychological, physical, or childhood trauma; the defendant was a youth at the time the offense was committed; or the defendant is or was a victim of intimate partner violence or human trafficking.  The enactment of this provision is a legislative declaration that the normal application of the sentencing triad in those circumstances is inadequate to the Legislature's purposes and must be modified by special rules.

*Bruhn* explained that its requirement that the record affirmatively show compliance with the statutory mandate respects the strong concern that the Legislature has expressed for defendants in the specified circumstance. (*Bruhn, supra*, 210 Cal.App.3d at pp. 1199–1200.)  The record in *Bruhn* fell short even though section 1170.9 was "obliquely mentioned" at the sentencing hearing when the prosecutor referred to it and stated that in a previous case there had been no program available to receive the defendant.  (*Bruhn, supra*, 210 Cal.App.3d at p. 1200 & fn. 3.)  Noting that "[a]n intelligent

2

exercise of discretion cannot be inferred from a silent record," it found this lone reference by the prosecutor insufficient to indicate that the trial court complied with the statute.  (*Id.* at p. 1200.)

The *Panozo* court remarked that *Bruhn* "did not explain what it meant by a 'silent' record," but observed that the record in the case before it "lacks even an oblique reference to the relevant statutes and provides no basis to believe the sentencing court was aware of its mandatory obligations, strongly suggesting the opposite conclusion."  (*Panozo, supra*, 59 Cal.App.5th at p. 837, fn. 13.)  The defendant's sentencing memorandum did not mention sections 1170.9 and 1170.91, although it did argue that the defendant's "PTSD from serving as a Marine in Iraq 'partially led him to where he is now,'" and asked the court to grant probation and permit him to enroll in Veteran's Court.  (*Panozo*, at p. 829.)  The probation report mentioned his military service and PTSD diagnosis, but did not identify them as mitigating factors.  (*Id.* at p. 830.)  The trial court quoted the aggravating and mitigating circumstances listed in the probation report, found that the aggravating circumstances outweighed the mitigating circumstances, denied probation with a referral to Veteran's Court, and concluded by thanking the defendant for his service.  (*Id.* at p. 831.)  In the *Panozo* court's view, the record was "ambiguous" about whether the trial court was aware of its obligations.  (*Id.* at p. 840.)  On the one hand, the court was "plainly aware that Panozo served in Iraq, struggled with PTSD and alcohol use, and requested probation and treatment through Veterans Court."  (*Id.* at p. 838.)  On the other hand, defense counsel neither cited the applicable statutes nor explained that the court was required to consider the service-related issues as mitigating circumstances, and neither the prosecution nor the probation department acknowledged them as mitigating circumstances.  (*Id.* at p. 839.)

3

**B.**

*Panozo*'s conclusion that the record was ambiguous similarly applies to the record here. Nielsen's trial counsel did not mention section 1170(b)(6), let alone offer any argument based on it. The probation report did not include a check in the box under mitigating circumstances to indicate that "[t]he defendant experienced . . . childhood trauma . . . and it was a factor in the commission of the crime." The prosecutor argued that Nielsen's substance abuse, which the probation report identified as the sole mitigating factor, did not reduce his culpability for vehicle theft, and that "even if the Court were to find that mitigating circumstance, the—the aggravating circumstances outweigh that both in numbers as well as significance." Like Nielsen's own counsel, the prosecutor did not mention section 1170(b)(6).

The majority notes that the court referred to Nielsen's "pretty traumatic childhood" and expressed empathy for his situation. But as the Attorney General argues, "this was not a finding that appellant's childhood trauma was a contributing factor to the commission of the felony offenses for which he was convicted." (See *Fredrickson, supra*, 90 Cal.App.5th at p. 992 [presumption is not triggered unless the court makes such a finding].) Even if the court did consider it a mitigating factor, notwithstanding the probation report's failure to identify it and defense counsel's failure to argue it, weighing that factor without applying the lower term presumption is not compliance with section 1170(b)(6). It is precisely what the Legislature did *not* want trial courts to do when such a mitigating circumstance exists.

Context also matters. At the hearing, Nielsen's trial counsel addressed only the probation department's conclusion that "a straight local prison sentence seems more appropriate [than probation] given the defendant's history." She argued that a residential rehabilitation program would better

4

serve Nielsen's needs, and Nielsen himself then read a letter asking the court to sentence him to an inpatient program. In response, the court explained its decision to deny probation, referring to an unbroken pattern of "criminality from the time you were a juvenile until today," a history of "failure to report, failure to follow through and getting sent to local prison commitments," and "[w]hat is really telling is if you are out of custody . . . and seeking that treatment and you didn't do that." The court concluded: "Again, I am empathetic to your situation. But based on your criminal history the Court cannot extend a grant of probation again. There's just no way. It's just not realistic. . . . Drug addiction is a terrible, terrible waste of life. So it brings me no joy to do this, but I would not grant you probation. I would deny probation." At no point did the court explain its reasoning with respect to its selection of the aggravated term. Without further discussion, it simply imposed the four-year upper term recommended in the probation report. That report likewise expressly discussed only why a "straight local prison sentence" was more appropriate than probation, never purporting to explain why the upper term was more suitable than the middle or lower term.

The only other thing the majority says about the record is that the trial court likely "did not overlook section 1170(b)(6)" because the court complied with subdivision (b)(2) of section 1170, which was added to the statute at the same time and requires aggravating factors to be proved beyond a reasonable doubt at trial unless admitted by the defendant. I do not think one can logically infer from the fact that the trial court did not violate subdivision (b)(2)—because it accepted Nielsen's admission of the aggravating factors— that it applied subdivision (b)(6)'s presumption in favor of the lower term based on his childhood trauma. As discussed above, the record strongly suggests otherwise.

5

In addition, *Fredrickson* observed that "[p]rior caselaw does not clarify what initial showing would be sufficient" to trigger the presumption under section 1170(b)(6), and held for the first time that "an initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's [qualifying condition] *may* have been a contributing factor in commission of the underlying offense." (*Fredrickson, supra*, 90 Cal.App.5th 984, 993–994, italics added.)  If we are to assume the trial court was aware of and applied that standard in evaluating whether there was sufficient evidence of a connection between Nielsen's childhood trauma and the auto theft for which it imposed the aggravated term, then we ought also to assume it was aware of *Fredrickson*'s statement, in the same paragraph, that the trial court should "make an express finding regarding the Section 1170(b)(6)(B) lower term presumption." (*Frederickson*, at p. 993.)  And yet it did not.  While the majority may decide today to reject this aspect of *Fredrickson*, in my view it makes little sense to presume the trial court silently decided to do the same.

Finally, imagine the trial court's inner monologue implied by the majority's reading of the record:  "I have noticed an omission in the probation report that the parties haven't raised.  It doesn't identify Mr. Nielsen's childhood trauma as a mitigating circumstance, and under section 1170(b)(6), which the parties also haven't raised, I'm required to apply a presumption in favor of the lower term if childhood trauma may have been a contributing factor to the offense.  Of course, the prosecutor would probably argue that, even assuming there was sufficient evidence of childhood trauma, there isn't enough evidence that it was a contributing factor to the auto theft, because that's what he said about the substance abuse, and perhaps the connection is even more attenuated with this factor.  Defense counsel, who should know

the record and the law and has a duty to advocate for her client, hasn't asked me to find childhood trauma as a mitigating factor and hasn't argued that I need to apply any presumption based on it. But I don't need to ask the parties for their views, because it's clear to me that under the *Fredrickson* standard there's enough evidence here to require the presumption in favor of the lower term based on childhood trauma. So I'm applying it, and I'm finding nonetheless that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. And yes, *Fredrickson* said I should indicate on the record that I've made this finding, but I'm not persuaded that's a correct statement of the law, so I won't."

I do not think that happened.

## C.

The majority relies on *People v. Caparrotta* (2024) 103 Cal.App.5th 874, but that case is not on point. There, the defendant's sentencing memorandum argued that the lower term presumption under section 1170(b)(6) applied, and—so far as the opinion discloses—there was no contention that the evidence was insufficient to trigger it. (*Caparrotta*, at p. 905.) That the defendant raised the presumption was an express part of the court's holding: "[B]ecause Caparrotta highlighted Penal Code section 1170, subdivision (b)(6) in his sentencing memorandum, we presume that the trial court was aware Caparrotta was seeking to benefit from that provision." (*Caparrotta*, at p. 905.) *Caparrotta*, like *Bruhn* and *Panozo*, was therefore sensitive to the record in a way the majority opinion is not.

Given the contextual reasons in the record to doubt the trial court did what the majority supposes, I do not agree that the silent record presumption applies here. It has a proper role to play, but if deployed as a legal fiction

7

that sweeps away relevant context, the only thing it accomplishes is the evisceration of appellate review. The majority quotes the Supreme Court's statement that "[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) But in *Ramirez*, which concerned the trial court's alleged failure to consider the defendant's ability to pay before imposing a fine above the minimum amount, the court noted that the trial court had "considered and referred to the probation report," which "stated he had the ability to pay a $250 probation investigation fee, and recommended that he pay a $10,000 restitution fee, . . . at least implicitly convey[ing] that defendant's ability to pay was a relevant consideration," and had also "heard the defense argument, which was that defendant should not have to pay 'any fine' 'in view of [his] inability to work or have any money from this point onward.' " (*Ibid.*) Here, unlike in *Ramirez* or *Caparrotta*, there was nothing in the probation report or the defense argument to signal the applicability of the court's mandatory duty.

Moreover, it is important to recall that the record here suggests the prosecutor would have contested the applicability of section 1170(b)(6) had it been raised, just as the Attorney General does on appeal. Only after we have adjudicated that disputed legal issue in Nielsen's favor does it become relevant for us to consider what, if anything, the record shows about the trial court's compliance with the lower term presumption. Even if we assume the trial court considered section 1170(b)(6) notwithstanding the failure of any party to call it to its attention, the difficulty for the purposes of our review is that if the court, in a revised version of the inner monologue above, had silently resolved the unraised issue of the statute's applicability *against* Nielsen, the record would look exactly the same.

8

The majority cites rule 4.409 of the California Rules of Court, which provides that "[r]elevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." That rule is a poor fit for this kind of problem. In its paradigmatic application, it simply means that a trial court's failure to mention a specific mitigating or aggravating factor does not establish that the court rejected or failed to consider it. (See, e.g., *People v. Pearson* (2019) 38 Cal.App.5th 112, 117; *People v. Nevill* (1985) 167 Cal.App.3d 198, 202.) The Advisory Committee Comment to rule 4.409 states that the rule "applies the presumption of Evidence Code section 664 that [an] official duty has been regularly performed." As applied to judicial officers, Evidence Code section 664 operates as a presumption about *what the court did*, not *how it adjudicated* a non-obvious legal question before it. (See, e.g., *People v. Visciotti* (1992) 2 Cal.4th 1, 49 [because a defendant's written waiver of the right to be present must be obtained in open court, court would presume the trial court did so]; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 550 [court presumes that the trial court "regularly performed the lawful duty of informing defendant of the dangers and disadvantages of self-representation, and the consequences of his decision, before accepting his express waiver of his right to counsel"]; cf. *People v. Jeffers* (1987) 43 Cal.3d 984, 1000 [presumption does not apply to uncertain questions of law]; *In re Marriage of Jovel* (1996) 49 Cal.App.4th 575, 590 [same].) Thus, I do not think rule 4.409 converts *this* court's resolution of the question of the statute's applicability into a presumption that the trial court decided the question the same way and then determined that the upper term should be imposed regardless. That is a

9

reason why the standard of review the court adopted in *Fredrickson* is better than the one the majority advances here.

In any event, given the ambiguous record before us, at a minimum I would find that any presumption under rule 4.409 that Nielsen's sentence reflects the trial court's application of the statute has been overcome, as *Panozo* found in the case before it. (*Panozo, supra*, 59 Cal.App.5th at p. 839.)

## II.

To be entitled to relief based on the foregoing discussion, Nielsen would have to prevail either on his argument that his claim was not forfeited by his counsel's failure to raise section 1170(b)(6) in the trial court, or on his alternative argument that the failure to raise it constituted ineffective assistance of counsel. Because the majority does not reach these arguments, I will touch on them only briefly.

## A.

In *Panozo*, the court concluded that the defendant did not forfeit his claim by failing to object when the court did not list his PTSD as a mitigating factor. It reasoned that the defendant was not challenging "the manner in which the trial court *exercised* its sentencing discretion but rather its apparent misapprehension of statutory sentencing obligations," noting that a court's failure to comply with mandatory obligations—in that case, the obligation to consider the defendant's service-related PTSD—is not subject to forfeiture. (*Panozo, supra*, 59 Cal.App.5th at p. 840.) *Fredrickson* followed *Panozo* on this point, concluding that a claim that the trial court failed to apply the lower term presumption under section 1170(b)(6) is not subject to forfeiture because the trial court has a mandatory duty to apply the presumption once it has been triggered by evidence in the record. (*Fredrickson, supra*, 90 Cal.App.5th at p. 994, fn. 8.)

10

Without mentioning *Fredrickson*, the court in *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 held that the defendant forfeited his claim by failing to seek the lower term based on section 1170(b)(6), characterizing it as a claim that the trial court "failed to properly make or articulate its discretionary sentencing choices." While forfeiture may well apply to a claim that the trial court abused its discretion by finding under section 1170(b)(6) that imposition of the lower term was not in the interests of justice, that was not the claim the defendant made in *Fredrickson*, and it is not the claim that Nielsen makes here. Rather, he claims the trial court failed to comply with a mandatory duty by neglecting to apply the presumption at all.

Also without mentioning *Fredrickson*, in *People v. Achane* (2023) 92 Cal.App.5th 1037, 1044, the court held that the unauthorized sentence exception to the forfeiture doctrine does not apply to a claim that the trial court failed to apply the presumption under section 1170(b)(6). *Fredrickson*, however, did not rely on the unauthorized sentence exception to conclude that the claim was not forfeited, and neither does Nielsen here.

Because the contrary authorities are not on point, I would follow *Fredrickson* and find that Nielsen's claim is not forfeited.

**B.**

Even if the claim were forfeited, I would find it cognizable on appeal because Nielsen received ineffective assistance of counsel. Because the evidence warranted the application of section 1170(b)(6), no reasonable tactical purpose appears for failing to raise the statute, especially given the recommendation in the probation report that the court impose the upper term. And there is at least a reasonable probability that the outcome would have been more favorable to Nielsen had his counsel done so. (*People v. Hardy* (2021) 65 Cal.App.5th 312, 329–330 ["A 'reasonable probability' 'does

11

not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*' "].)  As noted above, the trial court discussed at length its decision not to extend a grant of probation, but did not explain its reasoning with respect to the length of the custodial sentence.  It imposed the four-year upper term recommended in the probation report, which had failed even to identify childhood trauma as a mitigating factor, let alone refer to the lower term presumption required by section 1170(b)(6).  And while the court mentioned Nielsen's childhood trauma, consistently with the probation report it did not connect that trauma to his commission of the offense.  Had the court done so and added the statutory presumption to the balance, there is a reasonable chance that it would have imposed a different sentence.

For these reasons, I respectfully dissent insofar as the majority denies Nielsen relief on his claim that the trial court erred by failing to apply the lower term presumption under section 1170(b)(6).

Trial Court:     Mendocino County Superior Court

Trial Judge:    Hon. Victoria Shanahan

Counsel:        Heather L. Monasky, under appointment by the Court of
                Appeal, for Defendant and Appellant.

                Rob Bonta, Attorney General, Lance Winters and Jeffrey
                M. Laurence, Assistant Attorneys General, Eric D. Share
                and Stephanie F. Richardson, Deputy Attorneys General
                for Plaintiff and Respondent.